## The Commonwealth *against* WOLF.

*Philadelphia.*

*Thursday,*
*January 9.*

CERTIORARI:

A conviction for doing worldly business on the sabbath, under the act of 22d April, 1794, is good, if it follows the form prescribed in the law, though it does not state the time when or place where the work was done, or the nature of it.

The proper mode of proceeding for this offence is by conviction, not by a *qui tam* action.

Persons professing the Jewish religion, and others who keep the seventh day as their sabbath, are liable to the penalty imposed by the law for this offence.

THIS was a *certiorari* to Alderman *Badger*, to certify a conviction by him of the defendant, for a breach of the sabbath, to which the following proceedings were returned.

"The Commonwealth | Charged on oath of *James Pusey*
*v.* | with having done and performed
*Abraham Wolf*. | worldly employment on the *Lord*'s day, commonly called *Sunday*.   Warrant issued 29th *July*, 1816.   And now *eodem die* defendant brought; be it remembered, that defendant being brought, confesses the fact, and alleges, that he is a Jew by persuasion.   And it is considered and adjudged by me, *Samuel Badger*, one of the aldermen of the city of *Philadelphia*, that the said *Abraham*, according to the form of the act of assembly in such case made and provided, be convicted and he is hereby convicted of having done and performed worldly employment or business, not being a work of necessity or charity, on the *Lord*'s day, commonly called *Sunday*.   And I, the said alderman, do, therefore, adjudge him to pay a fine of four dollars, which sum, by so doing and performing, he hath forfeited, to be distributed as the act of assembly directs.

"I certify the above to be a true extract from my docket, of all the proceedings thereupon appearing in this case. Witness my hand and seal, this first day of *December*, A. D. 1816.

[L. S.]    "*SAMUEL BADGER*, alderman."

*Phillips*, for the defendant, took the following exceptions to this conviction.

1. That the conviction does not state the debt to have been due in the city of *Philadelphia*.

2. That it does not state when the work was done.

3. That it does not state the particular kind of work that was done.

4. That there is no original conviction under the hand and seal of the magistrate; the proceedings being merely certified to be an extract from the magistrate's docket.

5. That the suit should be a *qui tam* action.

6. That those who profess the Jewish religion, and others who keep the seventh day as their sabbath, are not within the meaning of the act of assembly inflicting the penalty.

*Browne*, contra.

TILGHMAN C. J. was absent.

YEATES J. It was the obvious intention of the legislature, when they introduced into the 4th section of the law for the prevention of vice and immorality, passed 22d *April*, 1794, a form of conviction of the offences therein specified, to guard against reversals for want of technical niceties. The form is general, without stating the time or place when the offence was committed; and although persons of the age of sixteen years, or upwards, are subjected to a penalty for profanely cursing or swearing by the 2d section, the established form does not state, that the persons convicted had arrived at that age. It is abundantly sufficient, therefore, to observe on the objections made in point of form to this conviction, that Alderman *Badger* has minutely pursued the precedent prescribed by the act.

There is not even colour for the exception, that a *qui tam* action was the proper mode of procedure, against persons who should do or perform any worldly employment or business on the Lord's day, commonly called *Sunday*, works of necessity and charity only excepted. The act considers a breach of the sabbath as a *crime* injurious to society; terms the complaint to the magistrate an accusation; and calls the

1817.

The Com-
monwealth
*v.*
WOLF.

establishment of the truth of the offence charged, a *convic-tion.* Words totally inapplicable to an information *qui tam.*

But it has been objected, that those who profess the Jewish religion, and others who keep the seventh day as their sabbath, are not within the meaning of the act inflicting the penalty. That such people are comprehended within the general terms of the law, "any person," is not denied. But it is said, that such construction interferes with the 3d section of the 9th article of the state constitution, and is over-ruled thereby. The section runs thus :—" All men have a natural " and indefeasible right to worship Almighty God according " to the dictates of their own consciences. No man can of " right be compelled to attend, erect, or support any place of " worship, or to maintain any ministry, against his consent. " No human authority can, in any case whatever, controul or " interfere with the rights of conscience. And no preference " shall ever be given, by law, to any religious establishments " or modes of worship."

The defendant's counsel has not contended, that the prohibition of work on *Sunday,* immediately opposes the received doctrine of the Jews, as disclosed in the five books of *Moses;* but has asserted, that there may be persons of that religious persuasion, who may suppose, that the command in the decalogue, " six days shalt thou labour, and do all that thou " hast to do," imperiously binds them to work six days in each week ; and firmly believing *Saturday* to be the day set apart for rest, they can only cease to work on that day, consistently with their ideas of religious duty. It has also been urged, that there may be others who may make it a point of conscience to shew, by plain open unequivocal acts, that the Christian institution of *Sunday* is abhorrent to their minds.

To this we answer, that we have never heard of the fourth commandment having received this construction by any persons who profess to believe either in the Old or New Testament. And that the Jewish Talmud, containing the traditions of that people, and the Rabbinical constitutions and explications of their law, asserts no such doctrine. The true meaning of the command is uniformly supposed to be, that we should abstain from our usual labour the one-seventh part of our time, and devote the same to the worship of the Deity, and the exercise of our religious duties. Upon this

subject the sense of the adherents to the *Mosaic* dispensa-
tion is strongly evinced by the religious holidays which they
keep at the proper seasons.

Laws cannot be administered in any civilised government
unless the people are taught to revere the sanctity of an oath,
and look to a future state of rewards and punishments for the
deeds of this life. It is of the utmost moment, therefore,
that they should be reminded of their religious duties at
stated periods; and the labouring part of the community
must feel the institution of a day of rest as peculiarly adapt-
ed to invigorate their bodies for fresh exertions of activity.
A wise policy would naturally lead to the formation of laws
calculated to subserve those salutary purposes. The inva-
luable privilege of the rights of conscience, secured to us by
the constitution of the Commonwealth, was never intended
to shelter those persons, who, out of mere caprice, would
directly oppose those laws, for the pleasure of shewing their
contempt and abhorrence of the religious opinions of the
great mass of the citizens.

We have not the slightest difficulty in affirming the con-
viction of the defendant.

GIBSON J. concurred.

Conviction affirmed.